# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| GREGORY D. SUNDBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:09-cv-0838 |
| v. ) | Judge Wiseman / Knowles |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 8. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 11.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

# I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB")[1] on August 21, 2006, alleging that he had been disabled since July 27, 2005, due to degenerative and discogenic disorders of the back, leg and abdominal pain, and poor concentration. *See, e.g.,* Docket No. 6, Attachment ("TR"), pp. 24, 55, 116. Plaintiff's application was denied both initially (TR 24, 42-45) and upon reconsideration (TR 25, 55-57). Plaintiff subsequently requested (TR 59) and received (TR 5, 67-70) a hearing. Plaintiff's hearing was conducted on January 23, 2009, by Administrative Law Judge ("ALJ") James E. Craig.[2] TR 5-22. Plaintiff and Vocational Expert, Gary Sturgill, appeared and testified. *Id.*

On March 19, 2009, the ALJ issued a decision partially favorable to Plaintiff, finding that Plaintiff was disabled from July 27, 2005 to July 29, 2006, but that after July 30, 2006, Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 41. Specifically, the ALJ made the following findings of fact:

> 1. The claimant met the insured status requirements of the Social Security Act as of July 27, 2005, the date the claimant became disabled.

---

[1] Plaintiff's brief states that Plaintiff sought both disability insurance benefits under Title II of the Social Security Act ("DIB") and a claim for disability benefits under Title XVI ("SSI") (Docket No. 9), while Defendant states in its brief that Plaintiff sought only disability insurance benefits under Title II (Docket No. 11). The record, including Plaintiff's initial Complaint, does not reflect that Plaintiff filed for SSI benefits, but rather filed exclusively for DIB. *See* Docket No. 1, TR 5, 43, 55, 56. Moreover, throughout the different stages of the appeals process, the record only mentions a claim for DIB benefits. *Id.*

[2] Plaintiff's "Notice of Hearing" (TR 67) and the ALJ's hearing decision (TR 31) state that Plaintiff's hearing was held on January 21, 2009, while the hearing transcript itself states that Plaintiff's hearing occurred on January 23, 2009 (TR 5). This discrepancy, however, is immaterial to the issues before the Court.

2. The claimant has not engaged in substantial gainful activity since July 27, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. At all times relevant to this decision, the claimant had the following severe impairment: degenerative disc disease (20 CFR 404.1520(c)).

4. From July 27, 2005, through July 29, 2006, the period during which the claimant was disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

5. After careful consideration of the entire record, the undersigned finds that, from July 27, 2005, through July 29, 2006, the claimant had the residual functional capacity to perform work at the less than sedentary exertional level. He was unable to sustain work on a regular and continuous basis, that is for eight hours a day, 40 hours a week, or an equivalent work schedule.

6. From July 27, 2005, through July 29, 2006, the claimant was unable to perform past relevant work (20 CFR 404.1565).

7. The claimant was born on December 2, 1960, and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity assessed for the period from July 27, 2005, through July 29, 2006 (20 CFR 404.1568).

10. From July 27, 2005, through July 29, 2006, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11. The claimant was under a disability, as defined by the Social Security Act, from July 27, 2005, through July 29, 2006 (20 CFR 404.1520(g)).

12. Medical improvement occurred as of July 30, 2006, the date the claimant's disability ended (20 CFR 404.1594(b)(1)).

13. Beginning on July 30, 2006, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed on 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).

14. After careful consideration of the entire record, the undersigned finds that, beginning on July 30, 2006, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he should avoid repetitive pushing and pulling with the upper and lower extremities. He should never kneel or crawl, and only occasionally stoop and crouch. He should avoid moving mechanical parts, electrical shock, and high exposed places. He may occasionally need to use a cane for ambulation. Pain and medication would preclude complex job tasks.

15. In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

16. The medical improvement that has occurred is related to the ability to work (20 CFR 404.1594(b)(4)(i)).

17. Since July 30, 2006, the claimant has been a younger individual age 45-49 (20 CFR 404.1563).

18. Beginning on July 30, 2006, the claimant has been unable to perform past relevant work (20 CFR 404.1565).

19. Beginning on July 30, 2006, transferability of job skills is

> not material to the determination of disability because
> using the Medical-Vocational Rules as a framework
> supports a finding that the claimant is "not disabled,"
> whether or not the claimant has transferable job skills (See
> SSR 82-41 and 20 CFR 494, Subpart P, Appendix 2).
>
> 20. Beginning on July 30, 2006, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).
>
> 21. The claimant's disability ended on July 30, 2006 (20 CFR 404.1594(f)(8)).

TR 34-41.

On May 11, 2009, Plaintiff filed a timely request for review of the hearing decision. TR 100. On July 17, 2009, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

5

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of

medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

>   (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
> 
>   (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
> 
>   (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
> 
>   (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can

---

[3]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

7

> return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

8

## C. Plaintiff's Statement Of Errors

Plaintiff contends that: (1) The record evidence establishes that medical improvement did not occur as of July 30, 2006, and that Plaintiff continues to be disabled; (2) The ALJ failed to provide sufficient justification for discounting the opinion of Plaintiff's treating physician which demonstrated that he did not retain the residual functional capacity to perform substantial gainful employment; and (3) The ALJ failed to properly evaluate the credibility of Plaintiff's statements as required by SSA Ruling 96-7P. Docket No. 9. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. The record evidence establishes that medical improvement did not occur as of July 30, 2006, and that Plaintiff continues to be disabled**

9

Plaintiff argues that the ALJ erroneously concluded that Plaintiff experienced medical improvement as of July 30, 2006. Docket No. 9.  Specifically, Plaintiff argues that the medical evidence demonstrates that his condition actually worsened after that date, and that Plaintiff is therefore still disabled and entitled to benefits  Docket No. 9, *citing* 436-38, 518-23, 528-30, 532, 535, 538-40, 562.

Defendant argues that the totality of the medical evidence supports the ALJ's determination that, as of July 30, 2006, Plaintiff experienced medical improvement.  Docket No. 11.  Defendant contends that the evidence cited by Plaintiff to show that there was no medical improvement represents "selective portions of various medical records," and "ignor[es] the totality of the evidence."  *Id.*  Defendant maintains that, when taken as a whole, the medical evidence "demonstrates that Plaintiff's condition gradually stabilized" after his surgery.  *Id.*, *citing* 408, 413, 415-418, 437, 528, 532, 538-39, 542.

20 C.F.R. § 404.1594(b)(1) defines "medical improvement" as

> any decrease in the medical severity of your impairment(s) present at the time of the most recent favorable decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs, or laboratory findings associated with that impairment(s).

*Id.*; *see also Kennedy v. Astrue*, 247 Fed. Appx. 761, 768 (6th Cir. 2007) ("[A] comparison of circumstances existing at the time of the prior decision and circumstances existing at the time of review is necessary."). Furthermore, the Sixth Circuit has held that a claimant "is not entitled to a presumption of continuing disability." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994).

As noted above, the ALJ in the case at bar found that Plaintiff was disabled from July

27, 2005[4] to July 29, 2006, but reached medical improvement as of July 30, 2006. TR 37-38. On July 28, 2005, Plaintiff underwent a decompressive lumbar laminectomy and fusion at L4-L5 (TR 273) to correct a back injury that had occurred at Plaintiff's place of employment several years earlier and that was the subject of a worker's compensation claim (TR 103-09). After his surgery, Plaintiff began physical therapy in September 2005 (TR 407), and Plaintiff's worker's compensation physician, Dr. Scott C. Standard, noted that by April 14, 2006, Plaintiff had made "slow but steady progress" in recovering from his lumbar fusion surgery (TR 416).

Dr. Standard released Plaintiff to return to work on forty hours a week on April 14, 2006, noting that Plaintiff would have permanent restrictions of ten pounds lifting, with standing up to four hours a day, and no squatting, kneeling, bending, or stooping. TR 415-16. On July 14, 2006, three months after Plaintiff was allowed to return to work, Dr. Standard determined that Plaintiff had reached maximum medical improvement, with a permanent 25% impairment to his body. TR 417.

It is uncontroverted that the evidence from July 27, 2005 to July 29, 2006 demonstrates that Plaintiff was disabled.[5] Despite Plaintiff's selective citation of the record

---

[4] While Plaintiff's actual surgery occurred July 28, 2005 (TR 272), the ALJ cites July 27, 2005 as the actual onset date for disability (TR 31, 34-37). Plaintiff also claims July 27, 2005 as the onset date for disability. TR 116. This discrepancy, however, is immaterial to the issues before the Court.

[5] Neither Plaintiff nor Defendant contest the finding of the ALJ that Plaintiff was disabled during these dates, but instead differ on whether Plaintiff reached medical improvement as of July 30, 2006. *See* Docket No. 9, 11.

11

and argument to the contrary,[6] Plaintiff's medical records after July 30, 2006 support the ALJ's determination that Plaintiff experienced medical improvement and was no longer disabled as of that date. TR 38.

For example, the ALJ cited a Tennessee Disability Determination Services ("DDS") assessment by Dr. Jerry Surber dated November 2, 2006. TR 39, *citing* TR 421-26. Upon examining Plaintiff's spine, Dr. Surber noted that there was no gross muscle asymmetry and no muscle spasms. TR 424. Plaintiff was able to do a "squat-and-stand" about one-half of the way down, and although Plaintiff complained of some pain in his lower back and legs, Dr. Surber noted that Plaintiff's hips, knees, feet and ankles were palpably non-tender. *Id.* Plaintiff was also able to do straight leg raises while sitting or standing, and right and left one-leg stands, although he was "shaky" while doing the latter. *Id.* Dr. Surber noted that Plaintiff did not walk with a limping or antalgic gait, although Plaintiff did walk with a side-to-side waddling-type gait. TR 425. His overall impression was that Plaintiff "had no specific limitations regarding the functional mobility of any of his areas in complaint" during the examination. *Id.* Dr. Surber concluded that Plaintiff could: carry at least ten to fifteen and possibly up to twenty pounds occasionally during one third to one half of an eight-hour workday; carry less than ten pounds frequently during one third to one half of an eight-hour workday; stand or walk with normal breaks up to two to four hours in an eight-hour workday; and sit with normal breaks up to six to eight hours in an eight-hour workday. *Id.*

---

[6]Examples of Plaintiff's selective citation of the record include the following. Plaintiff argues that his September 29, 2006 x-rays showed "degenerative changes," when the physician actually noted "mild degenerative changes." TR 437. Plaintiff also argues that a June 8, 2007 x-ray and MRI showed that his disc space was narrowing at L5 and L6, and that he had a central annular tear at L6-S, but fails to mention that, in the same report, the physician found that "overall, this is a stable exam." TR 538.

12

The ALJ also cited Dr. Standard's notes and Plaintiff's MRI and x-ray results from 2007 to 2008, which indicated improvements in Plaintiff's condition. TR 36. A June 8, 2007 MRI scan conducted by Dr. Michael J. Spellman, Jr., indicated that Plaintiff had no stenosis and "minimal disc bulge diffusely." TR 539. An x-ray procedure, "lumbar spine, 3 views," conducted on the same day indicated an overall "stable exam." TR 538. Dr. Standard noted, on June 12, 2007, that Plaintiff's lumbar x-rays and MRI scan "look[ed] good," and that "there is no evidence of neural compression." TR 537. On November 30, 2007, Dr. Standard noted that Plaintiff was "stable" and "actually better on Lyrica and epidurals." TR 534. On February 29, 2008, Dr. Standard wrote that Plaintiff was "stable on his medications" and planned for Plaintiff to receive more epidurals a few months later in late spring or early summer. TR 533. Dr. Standard's notes from March 5, 2008, indicate that Plaintiff "has a very robust distal lateral fusion and this seems to be healing well" and that Plaintiff's x-rays "look good." TR 531. Dr. Standard noted on May 30, 2008, that Plaintiff's "x-rays look great and he has had no further spasms. Overall, I feel he is doing fairly well with this lumbar radiculopathy." TR 530. While Plaintiff complained to Dr. Standard on August 29, 2008 of increased pain in his right hip and back, Dr. Standard noted that Plaintiff had a normal gait and a limited range of motion of the lumbar spine. TR 529. Dr. Standard refilled Plaintiff's prescriptions of Soma, Lortab, and Darvocet and increased Plaintiff's Lyrica prescription in order to manage Plaintiff's pain. *Id.* On December 5, 2008, Dr. Standard noted only that Plaintiff was "stable on medications." TR 527.

After reviewing this evidence, the ALJ determined that physician treatment notes and radiological evidence demonstrated that Plaintiff's condition had improved with surgical

13

intervention, epidural therapy, and medication management. TR 38. The ALJ also found that Plaintiff's claim that his condition "has continued to go downhill" after July 2006, was not supported by medical evidence in the record (TR 39), and was in fact contradicted by medical records, including those from Drs. Surber and Standard, that referenced Plaintiff's stable and improving condition (*See* TR 36). The ALJ further found that Plaintiff's allegations that he suffered adverse side effects from his medications, such as lack of concentration, were likewise unsupported by the record. TR 39.

The ALJ considered the record as a whole and reached a reasoned decision. The ALJ's determination that Plaintiff experienced medical improvement as of July 30, 2006 was supported by substantial evidence. Plaintiff's claim fails.

**2. The ALJ failed to provide sufficient justification for discounting the opinion of Plaintiff's treating physician, which ultimately establishes that Plaintiff does not retain the residual functional capacity to perform substantial gainful activity.**

Plaintiff maintains that Dr. Standard's September 13, 2008 Medical Source Statement of Ability to do Work-Related Activities ("MSS") evaluation should be given controlling weight because Dr. Standard is Plaintiff's treating physician and Dr. Standard's opinion is supported by the evidence of record. Docket No. 9.

Defendant acknowledges that Dr. Standard is Plaintiff's treating physician, but argues that the ALJ was not required to accord controlling weight to Dr. Standard's September 2008 MSS because his opinion expressed in the MSS was inconsistent with other evidence of record. Docket No. 11. Defendant further argues that the ALJ provided specific and sufficient reasons that were supported by substantial evidence for rejecting Dr. Standard's September 2008 MSS. *Id.*

14

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1)  Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
> (3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
> (4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
> (5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Standard treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's giving great2er weight to his opinion than to other opinions. 20 C.F.R. § 404.1527(d)(2). Dr. Standard's September 2008 MSS opinion, however, contradicts other substantial evidence in the record, including his own medical evaluations of Plaintiff. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2); *see also Cohen v. Secretary v. Secretary of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (holding that a treating physician's opinion is not binding, especially when it contradicts other medical evidence in the record). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions of treating physicians are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). As such, the Regulations do not mandate that the ALJ accord Dr. Standard's evaluation controlling weight, so long as the ALJ articulated a basis for his determination. *Shelman*, 821 F.2d at 321.

The ALJ provided sufficient reasoning for his decision to discount the weight given to Dr. Standard's September, 2008 MSS, in which Dr. Standard concluded that Plaintiff could sit, stand, and walk for only thirty minutes at one time without interruption; could only occasionally lift objects lighter than ten pounds; and would need the assistance of a cane to ambulate (TR 518-19), which the ALJ noted would mean that Plaintiff could not even perform sedentary work on a sustained basis (TR 39). As the ALJ discussed, Dr. Standard's MSS contradicts Dr. Surber's

16

DDS exam, in which Dr. Surber noted that Plaintiff could stand or walk, with normal breaks, up to two to four hours in an eight-hour workday and that Plaintiff could sit for up to six to eight hours in an eight-hour workday (TR 425). TR 39. The ALJ found that Dr. Standard's MSS contradicted his own treatment notes, which include Dr. Standard's assessment that Plaintiff had reached maximum medical improvement on July 14, 2006, could return to forty hour work weeks, stand up to four hours a day, and lift objects less than ten pounds (TR 440). *Id.* Additionally, Dr. Standard's MSS was inconsistent with his November 30, 2007 treatment note, wherein he noted that Plaintiff was "stable and is actually doing better on Lyrica and epidurals," and stated, "I am pleased with his progress overall, and he seems to be stable." TR 534. Further, Dr. Standard's MSS was also inconsistent with his February, 2008 treatment note wherein he stated that despite some pain, Plaintiff is "stable with his medications" (TR 533), and with Dr. Standard's March, 2008 notations that Plaintiff's x-rays "look good," and he "seems to be healing well." TR 531. Finally, Dr. Standard's MSS was inconsistent with his May, 2008 notations that Plaintiff has "no further spasms," and that Plaintiff "is doing fairly well." TR 530.

The ALJ explained that Dr. Standard's September, 2008 MSS is incongruent with treatment notes and medical evidence of record. TR 39. Accordingly, Plaintiff's argument that the ALJ did not provide sufficient evidence for discounting the weight of Dr. Standard's opinion fails.

Plaintiff also argues that the September, 2008 MSS demonstrates that he does not retain the residual functional capacity to perform substantial gainful activity. Docket No. 9. Because the ALJ properly discounted Dr. Standard's September, 2008 MSS, however, he did not have to

17

accept the limitations contained therein. Plaintiff's argument that the opinion expressed in the MSS demonstrates that he remains disabled is therefore unavailing.

### 3. The ALJ failed to properly evaluate the credibility of Plaintiff's statements as required by SSA Ruling 96-7p.

Plaintiff claims that the ALJ committed reversible error by failing to adequately evaluate and assess Plaintiff's credibility as required by SSR 96-7p. Docket No. 9.

Plaintiff argues that the ALJ simply stated, in conclusory terms, that he applied the criteria set forth in SSR 96-7p, without discussing the weight accorded to Plaintiff's statements and the reasons for such weight. Docket No. 11. Defendant argues, however, that the ALJ properly provided specific reasons that were supported by substantial evidence from the record for his determination that Plaintiff's claim of disabling functional limitations as of July 30, 2006 was not supported by the record. *Id.*

> SSR 96-7p states, *inter alia*:
>
> 4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence**.**
>
> 5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Soc. Sec. Rul. 97-6p*, 1996 WL 374186, *1-2 (July 2, 1996).

Contrary to Plaintiff's arguments, the ALJ actually listed a number of specific reasons that led him to discount the credibility of some of Plaintiff's statements. TR 39. While the ALJ acknowledged that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the pain and other symptoms alleged, the ALJ determined that the level of debilitating pain claimed by Plaintiff in his testimony was unsupported by the medical evidence, specifically referencing Dr. Surber's DDS exam (*see* TR 421-26) and notes from Dr. Standard (*see* TR 527-37). TR 38-39. The ALJ noted that Plaintiff's condition seemed to improve with surgical intervention, epidural therapy, and medication management, and supported this conclusion with citations from Dr. Standard's medical notes which indicated that Plaintiff's condition was improving and that Dr. Standard was managing Plaintiff's pain by prescribing medication (s*ee* TR 527-37). TR 36, 38-39. The ALJ also noted that, although Plaintiff had limited range of motion of the lumbar spine, he had normal gait and no neurological deficits. TR 38. The ALJ further noted that Plaintiff had achieved maximum medical improvement on July 14, 2006, when Dr. Standard released him to perform sedentary work (TR 440). TR 38-39.

The ALJ considered Plaintiff's testimony about his symptoms and limitations but concluded that the objective medical evidence did not fully support Plaintiff's allegations. TR 39. The ALJ noted that Plaintiff's testimony of problems with concentration and memory was not supported by the record, and the ALJ found no evidence of significant deficits in memory exhibited during the hearing. *Id.* He also noted that, although Plaintiff alleged blurry vision affecting his ability to work, he never went to an eye doctor. *Id.* The ALJ also noted that Plaintiff's claim that he experiences significant side effects from his medication was unsupported in the record. *Id.*

Case 3:09-cv-00838    Document 12    Filed 07/27/10    Page 19 of 20 PageID #: 79

As has been demonstrated, the ALJ did not simply make a conclusory statement that he considered the required criteria. Rather, the ALJ reviewed the record, and specifically articulated his reasons for discounting Plaintiff's credibility. Substantial evidence supports the ALJ's decision to discount the credibility of Plaintiff's statements. Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

20

Case 3:09-cv-00838   Document 12   Filed 07/27/10   Page 20 of 20 PageID #: 80